Memorandum of Decision
CT Page 12510
On February 11, 1999, the Department of Children and Families (DCF) filed petitions to terminate the parental rights of Brian O. and Shannon C. to their minor son, Elijah A.. On June 14, 1999, the father, Brian O., consented to termination of his parental rights. Trial of the petition against the mother took place in this court on August 31, 1999. For the reasons stated below, the court denies the termination petition.
FACTS
The court finds the following facts and credits the following evidence. The mother, Shannon C., was born in 1980. She had a horrendous childhood, replete with incidents of physical and sexual abuse by her father and other male adults in the home, unsuccessful foster care, lack of education, and psychiatric disturbances.
On September 7, 1996, when she was only sixteen, Shannon gave birth to Elijah. Shannon turned Elijah over to a William A., whom CT Page 12511 she believed to be Elijah's father. On September 17, 1996, Shannon was admitted to a psychiatric hospital, where she remained for about two months. Shannon was admitted to psychiatric wards on at least two other occasions in the next six months. Shannon was diagnosed with depression, post traumatic stress disorder, and a history of suicidality. Up until the end of 1997, Shannon was prescribed a variety of medications.
In May, 1997, Mr. A., who himself was only nineteen or twenty years old and had a history of depression, informed DCF that he could no longer care for Elijah. DCF took temporary custody of Elijah on May 9, 1997. On September 4, 1997, Elijah was adjudicated neglected and committed to DCF custody for a period of one year.[2] The court at that time entered expectations for the mother to meet.
On June 18, 1997, Shannon stabbed a boyfriend and was briefly hospitalized with suicidal ideation. In August, 1997, Shannon pleaded guilty to second degree assault and received a suspended sentence and three years' probation. In the next eighteen months, Shannon lived transiently in shelters, an independent living program, or in an abusive environment with her father, was hospitalized after a suicide attempt and then discontinued individual mental health counseling, and failed to complete a parenting program. Shannon also failed to appear for a substance abuse evaluation despite a history of underage alcohol use.
DCF filed a petition for termination of parental rights on February 11, 1999. At the time, the mother was living with a boyfriend who had a history of drug abuse and who had been referred to DCF for physical abuse of a former wife. Shannon's father, with his own uncomplimentary history, also moved in. A home assessment by DCF revealed an unlocked gun cabinet containing two or three rifles as well as one gun standing outside the cabinet. In addition, the home was not clean or completely safe for a child.
Just prior to trial, the mother moved out of this residence to an uncertain location. The mother is in compliance with her criminal probation. A social worker that Shannon saw through her probation concluded that Shannon no longer needs counseling. The mother continues to be involved with an Oasis program that focuses on life and employment skills, and is also in an educational program. She is working at a convenience store. On August 17, 1999, Shannon obtained a substance abuse evaluation. CT Page 12512
Elijah, sadly, has been in five foster home placements over the past two and a quarter years. Birth to Three has provided services to Elijah due to speech and language delays. They have found him at risk for further delays due to his multiple foster care placements. Elijah is now in a legal risk adoptive home where he refers to his foster parents as "mom" and "dad." A DCF social worker testified that the foster parents are "willing" to adopt, though the foster parents themselves did not testify.
Shannon has visited Elijah weekly, with a few missed appointments, at a DCF office. Shannon has brought gifts for Elijah and seems bonded to him. Shannon has never been inappropriate with Elijah and the visits have generally gone well, but she fails to engage him in play or appropriate conversation. Instead, Shannon tends to sit and observe him play. Elijah recognizes his mother, but is more attached to his foster parents.
In March, 1998, paternity testing revealed Brian O. to be Elijah's father. On June 14, 1999, Mr. O. consented to the termination of his parental rights.
TERMINATION ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." General Statutes § 17a-112 (c)(1)[3] The court need not make such a finding, however, "if a court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b [dealing with permanency planning for committed children] that such efforts are not appropriate." General Statutes § 17a-112 (c)(1). In this case, the court made such a finding on July 7, 1998.
B. Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See InCT Page 12513re Michael R., 49 Conn. App. 510, 512, 714 A.2d 1279, cert. denied, 247 Conn. 919, 722 A.2d 807 (1998); General Statutes § 17a-112 (c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a).
There being no material amendments to the petition, the adjudicatory date in this case is February 11, 1999. DCF has alleged the ground of failure to rehabilitate. The court finds that DCF has proven this ground by clear and convincing evidence.
The ground of failure to rehabilitate arises when "the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112 (c)(3)(B)(1). No dispute exists that the court adjudicated the children neglected on September 4, 1997, thus satisfying one element of the statute.
The rest of the statute requires the court to find whether the parent has achieved "such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112 (c)(3)(B). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable `within a reasonable time.'"In re Luis C., 210 Conn. 157, 167, 554 A.2d 722 (1989). The statute, however, does not require parents to "be able to assume full responsibility for [a] child, unaided by available support systems." In re Juvenile Appeal (84-3), 1 Conn. App. 463, 477,473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). Because of the requirement that the court predict what will happen within a "reasonable time" after the filing of the termination petition, it is sensible to conclude that the court can consider not only the parents' conduct before the filing of the termination petition, but also their conduct after its filing.
During the adjudicatory period, and for a reasonable time thereafter, Shannon did not rehabilitate herself. She did not CT Page 12514 complete parenting classes for which, based on her youth and her inability to relate to Elijah, she has a critical need. She failed to appear for a scheduled substance abuse evaluation to address her underage drinking. She continued to have psychiatric problems but did not continue with treatment. Most importantly, she did not maintain adequate housing. Shannon lived transiently or in an environment unsafe for children. Her support system of boyfriends and her father, with their history of substance abuse and domestic abuse, provided the wrong example. The court accordingly finds by clear and convincing evidence that, during the adjudicatory period and for a reasonable period of time thereafter, the mother has failed to rehabilitate herself to the point where she can assume a responsible position in Elijah's life.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." General Statutes § 17a-112 (c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
DCF's case was not convincing. Its two witnesses — a social worker and a social work aid — did not impress the court that the best interest of Elijah clearly favors termination. Although it is possible that Shannon's mental health may pose a barrier to developing a relationship with Elijah, DCF did not present any expert mental health testimony to that effect. In contrast, the respondent elicited that at least one social worker felt that the mother no longer needed counseling. The testimony revealed that the foster parents are "willing" to adopt Elijah, but there was no evidence of any greater commitment to his permanent care. The foster parents themselves did not testify. It is true that Shannon failed to rehabilitate herself from some significant problems during the adjudicatory period and still does not have adequate housing. On the other hand, the most recent evidence is that Shannon has remained in employment and educational programs, obtained a substance abuse evaluation, complied with her probation, and maintained a job. DCF did not introduce any negative information about Shannon from any of these programs or entities. Although lacking in parenting skills, Shannon has also shown a continuous regard for Elijah and their visits generally go well. Given that Shannon is still a teenager CT Page 12515 attempting to overcome a tumultuous upbringing, and that the evidence favoring Elijah's immediate adoption was not overly persuasive, it is appropriate to give Shannon an additional opportunity to regain custody of her biological son.
In sum, while there is some evidence favoring termination, DCF did not meet its burden of proving by clear and convincing evidence that the best interest of Elijah warrants termination of Shannon's parental rights at this time. Because Shannon is not now ready to regain custody of Elijah, the best interest of Elijah favors continued commitment to DCF.
In arriving at a decision, the court must consider and make written findings regarding seven factors set out in General Statutes § 17a-112 (e). See In re Tabitha P.,39 Conn. App. 353, 362, 664 A.2d 1168 (1995). A discussion of these factors follows.
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
Based on the foregoing discussion, the court finds that DCF provided foster care for Elijah and offered the mother visitation, individual counseling, living arrangements, parenting classes, and substance abuse evaluations. These services were relevant to the parent's needs and were offered in a timely manner.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
Based on the foregoing discussion, the court finds that DCF offered Shannon appropriate services and guidance, and sufficient time to permit family reunification.
3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
On September 4, 1997, the court entered the following expectations for the mother to meet: (1) keep all appointments set by or with DCF, (2) keep whereabouts known to DCF and your CT Page 12516 attorney, (3) visit the child as often as DCF permits, (4) participate in counseling (parenting and individual), 5) secure and maintain adequate housing and income, 6) no substance abuse, and 7) no further involvement with the criminal justice system. As detailed above, DCF substantially met its obligation to provide assistance. The mother's compliance with these expectations was mixed. In general, she complied with the third, sixth, and seventh expectations and did not comply with the others.
4) The feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
As stated above, Elijah knows his mother but does not seem bonded to her. He seems attached to his current foster parents.
5) The age of the child.
Elijah is three years old.
6) The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Based on the foregoing discussion, the court finds that the mother has maintained contact with Elijah. Shannon has made some efforts to gain some stability in her life but is not currently in a position to have Elijah returned to her custody.
7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
As discussed above, the mother's difficulties stem from her CT Page 12517 predicament of being a teenage mother who herself was abused and neglected throughout her childhood. In that situation, the mother cannot be held completely responsible for her failures with regard to Elijah.
CONCLUSION
Based upon the foregoing findings, the termination petition is denied. Subject to further orders of the juvenile court, Elijah shall remain committed to DCF until September 4, 2000.
It is so ordered.
Carl J. Schuman Judge, Superior Court