Memorandum of Decision
On November 20, 1998, the Department of Children and Families CT Page 13856 (DCF) filed petitions to terminate the parental rights of Carlos O. and Shannon B. to eight of their minor children: Justin O, Carlos O., Briana B., Anthony O., Kayla O., Jovanni O., Gerald O., and Jazmine O.[2] On August 4, 1999, DCF filed petitions to terminate the rights of the same parents to their two other minor children: Candy O. and Jordan O. The court consolidated all petitions for trial, which took place on October 4, 1999. For the reasons stated below, the court now grants the termination petitions.
FACTS
The court finds the following facts and credits the following evidence. The mother is currently almost thirty-one years old; the father is thirty-six. Despite never having been married, the parents have had ten children over the last thirteen years: Candy, who was born in 1986; Justin, 1987; Carlos, 1988; Briana, 1990; Anthony, 1991; Kayla, 1992; Jovanni, 1994; Gerald, 1995; Jazmine, 1997; and Jordan, 1998. As of July, 1999, the mother was pregnant with her eleventh child.
In 1992, a probate court transferred guardianship of Candy to her maternal grandmother. In 1995, DCF filed neglect petitions on behalf of Justin, Carlos, Briana, Anthony, Kayla, and Jovanni. The presenting problems were drug abuse, domestic violence, malnourishment, and physical abuse of Briana. On August 16, 1995, the court adjudicated these six children neglected and returned them to their parents' home under DCF protective supervision.
In October, 1995, the court placed these six children, as well as Gerald, who had been born on June 30, 1995, in temporary DCF custody. On February 8, 1996, the court entered an adjudication of neglect in favor of Gerald and committed all seven children to DCF. On June 6, 1997, the court entered an order of temporary custody for Jazmine, who was born on June 3, 1997, testing positive for cocaine. The court adjudicated Jazmine neglected on October 27, 1997, and committed her to DCF custody.[3]
During the period from 1994 to November, 1998, when DCF filed for termination for these eight children, DCF made no fewer than twenty referrals of the parents to substance abuse evaluation and treatment, housing assistance, domestic violence counseling, parenting classes, and various other social services. Most of these referrals resulted in the parents not attending, not CT Page 13857 following through, or testing positive for drugs. From April, 1996 to October, 1996, and again from January, 1997 to March, 1997, the parents traveled with a carnival and failed to maintain contact with DCF. From April, 1997 to November, 1997, the whereabouts of the parents was generally unknown.
The father has had a criminal record since 1989, consisting of two convictions for possession of narcotics, one for burglary, one violation of probation, and several misdemeanors. He was incarcerated from November, 1997 to April, 1998 for possession of narcotics. Thereafter he did not comply with the conditions of his transitional release. He was reincarcerated from May, 1998 to October, 1998. The father was released again and he did not comply with the conditions of his probation.
On April 14, 1998, Jordan was born. Two weeks later the maternal grandmother died and Candy returned to her mother and newborn brother. DCF filed neglect petitions on behalf of Candy and Jordan in January, 1999.
According to drug tests, the mother was using cocaine in the first four months of 1999. The parents did not attend court-ordered psychological evaluations scheduled for March and April, 1999. In April and May, 1999, the father and mother rejoined the carnival. DCF obtained temporary custody of Candy and Jordan during this time period. Since that time, the parents have visited Jordan once and have not contacted DCF to inquire about his well being. On two occasions, the parents have called the relatives where Candy was placed, but the parents have not visited her at all. The parents have not sent Candy or Jordan any cards. As of July, 1999, the parents were with the carnival in New York. On August 24, 1999, the court adjudicated Candy and Jordan neglected and committed them to DCF. The parents did not appear for the termination trial in this court.
DCF placed all the children except for Jordan in the homes of relatives or friends of the parents. Several of the children have been placed together in groups of twos or threes. All of these foster families are willing to adopt. The natural parents had the opportunity to visit their children without restriction at these foster homes and DCF provided bus passes and other transportation assistance. During the visits that took place, Gerald and Jazmine did not seem to recognize the mother or father as their parents and did not seek comfort or support from them. Briana, Kayla, and Jovanni recognized the mother and father as their parents, but CT Page 13858 did not seek their parents for comfort or support. The parents did not interact well with the children at the visits that DCF observed.
DCF placed Jordan with a nonrelative foster family because the relative foster families were overwhelmed. Jordan has begun to form an attachment to this family. The family is considering whether they would like to adopt Jordan.[4]
TERMINATION ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." General Statutes § 17a-112(c)(1).[5] In this case, the record clearly and convincingly establishes that DCF made the requisite reasonable efforts. DCF diligently attempted to locate the parents when their whereabouts were unknown. When the parents were available to DCF, the agency offered them an array of services and referrals for substance abuse evaluation and treatment, housing assistance, domestic violence counseling, and parenting classes. DCF also offered the parents open-ended visits with their children at the respective foster homes, along with bus passes and other transportation assistance. The purpose of these services was to reunite the family.
B. Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See Inre Michael B., 49 Conn. App. 510, 512, 714 A.2d 1279, cert. denied, 247 Conn. 919, 722 A.2d 807 (1998); General Statutes §17a-112(c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice. Book § 33-3(a).
DCF amended the petitions with regard to Candy and Jordan so that the adjudicatory date for them is October 4, 1999. The adjudicatory date for the other eight children is the date of the petition, which is November 20, 1998. As amended, the petitions CT Page 13859 allege the grounds of abandonment against both parents with regard to Candy and Jordan, failure to rehabilitate against both parents with regard to all children, and lack of an ongoing parent-child relationship against both parents concerning Briana, Kayla, Jovanni, Gerald, and Jazmine. The court finds that DCF has proven its allegations by clear and convincing evidence except for the allegations of no ongoing relationship.
1. Abandonment
General Statutes § 17a-112(c)(3)(A) provides that a ground for termination exists when "[t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child." "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re Migdalia M.,6 Conn. App. 194, 208-209, 504 A.2d 533, cert. denied,199 Conn. 809, 508 A.2d 770 (1986). Conversely, "where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id, 209. The statutory term "maintain" implies a "continuing, reasonable degree of concern." Id., 210.
Since April and May, 1999, when DCF obtained temporary custody of Candy and Jordan, their parents have abandoned them. They have visited Jordan once and Candy not at all. The parents have not sent Jordan and Candy any cards. The parents have not maintained regular contact with DCF or the children's care takers. They did not appear for trial. Instead, the parents have joined the carnival. DCF has proven the ground of abandonment against both parents with regard to Candy and Jordan by clear and convincing evidence.
2. Failure to Rehabilitate
A second statutory ground for termination arises when "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General CT Page 13860 Statutes § 17a-112(c)(3)(B)(1). No dispute exists that the court has adjudicated all ten children to be neglected, thus satisfying one element of the statute.
The rest of the statute requires the court to find whether the parent has achieved "such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112(c)(3)(C). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable `within a reasonable time.'"In re Luis C., 210 Conn. 157, 167, 554 A.2d 722 (1989). The statute, however, does not require parents "to be able to assume full responsibility for [a] child, unaided by available support systems." In re Juvenile Appeal (84-3), 1 Conn. App. 463, 477,473 A.2d 795, cert.denied, 193 Conn. 802, 474 A.2d 1259 (1984). Because of the requirement that the court predict what will happen within a "reasonable time" after the filing of the termination petition, it is sensible to conclude that the court can consider not only the parents' conduct before the filing of the termination petition, but also the conduct occurring after it.
For parents who have brought ten children into this world, the father and mother have a disgraceful record of drug use, failure to appear for or follow through with services, abandoning their children to join the carnival and, in the father's case, criminal recidivism. Understandably given this record, their visits with their children have not gone well. Since the parents have not shown any measure of responsibility toward their children in the past, the court certainly cannot say that they could be responsible persons in the children's future. The evidence is clear and convincing that the parents have failed to rehabilitate with regard to all ten children within the meaning of the termination statute.
3. No Ongoing Relationship
The third statutory ground alleged in this case is that there is "no ongoing parent-child relationship, which means the relationship that develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the CT Page 13861 establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." General Statutes § 17a-112(c)(3)(D). This ground encompasses a situation in which "regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced." In re Juvenile Appeal(Anonymous), 181 Conn. 638, 645, 436 A.2d 290 (1980) (internal citation omitted). "In either case the ultimate question is whether the child has no present memories or feelings for the natural parent." Id., 646.
In the present case, the only direct evidence of no ongoing relationship between the parents and Briana, Kayla, and Jovanni is one sentence in the DCF social study stating that these three children do not seek their parents for comfort and support. There are only a few sentences in the social study stating that Gerald and Jazmine also do not seek their parents for comfort or support and do not seem to recognize the father and mother as their parents. The evidence may be this sketchy due to the limited opportunities that DCF had to observe the parents and these children together. Whatever the reason, DCF retains the burden of proof and the court finds that DCF did not prove the ground of no ongoing relationship by clear and convincing evidence.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." General Statutes § 17a-112(c)(2). The court can consider all events occurring through the close of the dispositional hearing. See Practice Book § 33-5.
The best interest of all ten children clearly and convincingly requires termination of the parental rights of their biological mother and father. The parents have betrayed the utmost irresponsibility by bringing ten, and possibly eleven, babies into this world without being able to provide adequate care for them. The parents have failed to rehabilitate from persistent drug problems. The father is a repeated criminal offender. The parents have abandoned their children from time to time, including most recently, by joining the carnival or otherwise living transiently. What little relationship they have CT Page 13862 with some of their children is a poor one. Neither parent showed enough interest in their children to appear for trial.
The most redeeming quality of the parents is that they have family and friends who have taken good care of these children. If there is any happy ending to this sad story of prolificacy, it is that the children presumably will be adopted by adults who, unlike the father and mother here, are eager to accept the benefits and the burdens of parenting. Termination of parental rights and adoption by these foster parents will provide the children the permanency and stability to which the children are entitled. See In re Juvenile Appeal (83-CD), 189 Conn. 276, 292,455 A.2d 1313 (1983).
In arriving at a decision, the Court must consider and make written findings regarding seven factors set out in General Statutes § 17a-112(e). See In re Tabitha P., 39 Conn. App. 353,362, 664 A.2d 1168 (1995). A discussion of these factors follows.
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
Based on the foregoing discussion, the court finds that DCF provided foster care for the children and offered the natural parents unlimited visitation. DCF also made referrals for the parents to an array of social service agencies. These services were relevant to the parent's needs and were offered in a timely manner, but the parents did not take advantage of them.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
Based on the foregoing discussion, the court finds that DCF offered the parents appropriate services and guidance, and sufficient time to permit family reunification.
3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
On August 16, 1995, February 8, 1996, and September 18, 1998, the court entered the following expectations or specific steps CT Page 13863 for the mother to meet to facilitate the return of the children to her custody: (1) keep all appointments set by or with DCF, (2) keep whereabouts known to DCF and your attorney, (3) visit the child as often as DCF permits and demonstrate appropriate parent/child interaction during visits, (4) participate in drug and alcohol counseling (and, as of September 18, 1998, parenting and individual counseling) and follow recommendations, 5) sign releases as requested, 6) secure and maintain adequate housing and income, 7) no substance abuse, and 8) no involvement with the criminal justice system. In addition, over the course of the case, the court ordered the mother to make use of respite service, parent aide and other in-home services, insure that the school age children attend school, and submit to substance abuse assessment, treatment, and random drug testing. Because the father did not appear in court, no expectations or specific steps were imposed except for the father to notify DCF of his prison release date and his address. As detailed above, DCF substantially met its obligation to provide assistance but the parents did not comply with the expectations.
4) The feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
All the children have become attached to their foster parents. Candy, Carlos, and Kayla have some positive feelings for their parents. Justin, Briana, Anthony, and Jovanni have some limited feelings for and knowledge of their parents. Gerald and Jazmine do not have any memories of their parents. Jordan lived with his parents for the first year of his life, and now has lived with his foster mother for five months. To the extent that the ten children can articulate their views, they would prefer to live with their foster parents rather than their natural parents.
5) The age of the child.
Candy is thirteen years old, Justin is twelve, Carlos is almost eleven, Briana is almost nine, Anthony is almost eight, Kayla is almost seven, Jovanni is five, Gerald is four, Jazmine is two, and Jordan is eighteen months.
6) The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of CT Page 13864 the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Based on the foregoing discussion, the court finds that parents did not adjust their circumstances in time to make it in the children's best interest to return to their home. The parents' contact with the children and their care takers was limited and of poor quality.
7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
As discussed above, the parents' difficulties stem primarily from their own lifestyle choices and not from unreasonable interference by each other or any third person.
CONCLUSION
Based upon the foregoing findings, the court determines that it is in the best interest of all ten children for a termination of parental rights to enter with respect to the father, Carlos O., and the mother, Shannon B. Accordingly, the court hereby grants the termination petitions. The court further orders that the Commissioner of DCF is appointed statutory parent for the children for the purpose of securing adoptive families. If the respective foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commitments of Justin O., Carlos O., Briana B., Anthony O., Kayla O., Jovanni O., Gerald O., and Jazmine O. are extended to October 20, 2000 unless the court's judgment of termination becomes final before then. The Commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
It is so ordered. CT Page 13865
Carl J. Schuman Judge, Superior Court