Memorandum of Decision
On September 28, 1998, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of Terrance H. and Angelina M. to their minor daughter, Destinee H. Trial took place in this court on June 6, 2000. At the outset of the trial, the court found an adjudicatory ground against the mother, Angelina M., and continued the dispositional phase of the trial. The case against the father, Terrance H., was tried to conclusion. For the reasons stated below, the court now grants the termination petition against the father.
FACTS
The court finds the following facts and credits the following evidence. The father was born in 1969. He met the mother in 1985. They had two children together. In 1989, the couple separated. The mother had a daughter, Chanae M., with another man. In 1990, the mother and father rekindled their relationship. On October 9, 1993, Destinee was born.
The father has a long criminal history, which began with a conviction for possession of narcotics in 1990. Domestic violence plagued the relationship between the mother and father. In March, 1995, the father was arrested and detained as a result of an assault upon the mother. In April, 1995, DCF obtained an order of temporary custody of Chanae and Destinee because the father was incarcerated and the mother was addicted to crack cocaine. The court adjudicated the children neglected on June 15, 1995, and committed them to DCF custody.
In January, 1996, the father was convicted of second degree assault, risk of injury to minors, and violation of probation and sentenced to three years in prison. Between June, 1995 and September, 1996, Destinee's foster mother arranged for Destinee to have regular visits with the father at prison. Beginning in September, 1996, DCF arranged monthly visits at the prison, which the father attended.
In May, 1997, the father was released to a halfway house. He attended a visit with Destinee at a DCF office on May 14, 1997. From that point on, the father missed seven of the next ten scheduled visits, most of the time without a valid excuse and some of the time without canceling in advance. The father's last visit with Destinee was October 30, 1997. CT Page 7449
The father was released from the halfway house in January, 1998. He failed to make anything more than feeble and unsuccessful efforts to contact DCF. At no point did the father send any cards, gifts, or letters for Destinee through DCF.
The father was arrested in January, 1999 on a variety of charges, including burglary and two counts of robbery. In February, 1999, the father was arrested for second degree assault, first degree burglary, and several other charges. He was charged with failure to appear in court on or about July 30, 1999. Somewhere during this time period, the father was detained in jail. He was recently convicted on the assault charge, which apparently involved an assault upon a woman who is now his wife. At the time of this termination trial, the father was awaiting sentencing. The father has not attempted to contact DCF during his most recent period of incarceration.[2]
The father and Destinee attended a psychological evaluation in January, 2000. The father was belligerent towards the evaluator and improperly took advantage of the occasion to attempt to have a meeting with his wife and a child of that marriage. The father's meeting with Destinee was without incident, although Destinee did not look towards him as a parental figure and, after the visit, Destinee's behavior deteriorated both at school and at home. The evaluator concluded that there was no father-daughter relationship.[3] The evaluator saw the father as an egocentric man with a disturbed history and recommended that his parental rights be terminated.
In May, 2000, the father sent the mother a threatening letter. During the trial of this case, the father disrupted court on several occasions.
Destinee resided in several foster homes before being placed on December 26, 1996 in the home of Antoinette B. Destinee has remained there since that time. Destinee has exhibited anxiety, sleeplessness, and defiant behaviors at times. Destinee is currently in therapy and is receiving medication. Antoinette does not wish to continue with Destinee's care permanently.
Destinee has been visiting with Chanae on a regular basis and those visits have gone well. Chanae lives in a therapeutic foster home with a foster mother who provides a very structured environment. DCF proposes to move Destinee to this foster home on June 30, 2000 because it offers the possibility of a permanent home with the structure that Destinee needs. DCF also leaves open the possibility that Destinee's natural mother, Angelina M., will rehabilitate and become a permanent resource.
TERMINATION ADJUDICATION
CT Page 7450
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." General Statutes § 17a-112
(c)(1).[4] The court, however, need not make a reasonable efforts finding "if a court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b [dealing with extensions of commitment or other permanency planning for committed children] that such efforts are not appropriate." General Statutes § 17a-112 (c)(1). In this case, the court found at extension hearings on November 23, 1998 and November 17, 1999 that reasonable efforts to reunify the parents with Destinee were no longer appropriate. Accordingly, the first element of the termination statute has been satisfied.
B. Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See In re Michael B.,49 Conn. App. 510, 512, 714 A.2d 1279, cert. denied, 247 Conn. 919,722 A.2d 807 (1998); General Statutes § 17a-112 (c)(3). In this adjudicatory phase, the court is ordinarily limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a).
The adjudicatory date in this case is September 28, 1998, the date of filing of the petition. The petition alleges the grounds of abandonment, failure to rehabilitate, and lack of an ongoing parent-child relationship against the father. The court finds that DCF has proven these grounds by clear and convincing evidence.[5]
This court can dispose of two of the grounds summarily. Based on the father's criminal record, his domestic violence, his failure to obtain any counseling, his poor visitation record, and his lack of a relationship with Destinee, DCF has proven by clear and convincing evidence that the father has failed to rehabilitate in that Destinee was adjudicated neglected and the father has failed to achieve "such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112 (c)(3)(B)(1). See generally In re Luis C.,210 Conn. 157, 167, 554 A.2d 722 (1989). Further, from the evidence that CT Page 7451 Destinee and the father do not have a father-daughter relationship and that Destinee has negative memories of the father, this court finds clearly and convincingly that there is "no ongoing parent-child relationship, which means the relationship that develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." General Statutes § 17a-112 (c)(3)(D). See generally In re Juvenile Appeal(Anonymous), 181 Conn. 638, 645-46, 436 A.2d 290 (1980).
The ground of abandonment exists when "[t]he child has been abandoned by the parent the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child." General Statutes § 17a-112 (c)(3)(A). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re MigdaliaM., 6 Conn. App. 194, 208-209, 504 A.2d 533, cert. denied, 199 Conn. 809,508 A.2d 770 (1986). Conversely, "where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id, 209. The statutory term "maintain" implies a "continuing, reasonable degree of concern." Id., 210.
The father's incarceration during much of the adjudicatory period is not a complete defense to abandonment. See In re Juvenile Appeal (DocketNo. 10155), 187 Conn. 431, 443, 446 A.2d 808 (1982). An incarcerated parent is expected to "make use of available though limited resources for contact with a distant child." Id. The father in this case did not. Although the father visited regularly with Destinee at the prison from June, 1995 to May, 1997, at no point did he send her cards, letters, and gifts and at no point did he inquire of DCF about Destinee's well-being. Further, the father visited with Destinee only three times between May and October, 1997, when he was in the halfway house. He then had no contact with her at all for the rest of the adjudicatory period, including nine months when he was not in prison or a halfway house. DCF has accordingly proven by clear and convincing evidence that the father abandoned his daughter.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF as proven by clear and convincing evidence that "termination is in the best interest of the child." General Statutes CT Page 7452 § 17a-112 (c)(2). The court can consider all events occurring through the close of the dispositional hearing. See Practice Book § 33-5.
The best interest of Destinee clearly and convincingly favors termination of the parental rights of Terrance H. The father spent much of the adjudicatory period in prison or in a halfway house, did not obtain counseling, and abandoned his daughter. After the adjudicatory period, the father went back to prison for another assault and faces a long prison sentence. He does not have a positive, parental relationship with Destinee. After their last meeting at the psychological evaluation, Destinee's emotional state, already somewhat fragile, deteriorated further. The threatening letter recently sent by the father to the mother and the father's disruptive behavior during this trial demonstrate that he is an angry and unrepentant man.
Although DCF's plan for Destinee does not include adoption, adoption is not a prerequisite for termination of parental rights. See In re EdenF., 250 Conn. 674, 708-10, 741 A.2d 873 (1999). There is nothing for Destinee to gain, and some risk of additional emotional harm, if she has further contact with the father. Termination is appropriate for this reason alone. Further, given the father's hostile behavior toward the mother, termination of the father's rights may also help the biological mother in her attempt to rehabilitate and reunify with Destinee, a prospect that deserves full consideration.
In arriving at a decision, the court must consider and make written findings regarding seven factors set out in General Statutes § 17a-112
(e). See In re Tabitha P., 39 Conn. App. 353, 362, 664 A.2d 1168 (1995). These factors serve only to guide this court in making the ultimate decision whether to grant the termination petition and no one finding is a prerequisite. See In re Eden F., 250 Conn. 674, 691, 741 A.2d 873
(1999). A discussion of these factors follows.
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
As stated above, DCF, in a timely fashion, offered the father visitation with Destinee and made recommendations for the father to obtain various forms of counseling.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
Based on the foregoing discussion, the court finds that DCF offered the CT Page 7453 father appropriate services and guidance, and sufficient time to permit family reunification.
3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
The court did not enter expectations or specific steps for the father.
4) The feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
As stated above, Destinee does not see her father as a daily parental resource. Destinee as a good relationship with her current foster mother, but it is not likely to be a permanent one.
5) The age of the child.
Destinee will be seven years old on October 9, 2000.
6) The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Based on the foregoing discussion, the court finds that the father did not adjust his circumstances in time to make it in Destinee's best interest to return to his custody. The father had only limited contact with her and with DCF.
7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
As discussed above, the father's difficulties stem primarily from his own lifestyle choices and not from unreasonable interference by the mother or any third person, or from economic circumstances.
CONCLUSION
CT Page 7454
Based upon the foregoing findings, the court hereby grants the petition to terminate the rights of Terrance H. to Destinee H.
It is so ordered.
 Carl J. Schuman Judge, Superior Court