[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] TERMINATION OF PARENTAL RIGHTS MEMORANDUM OF DECISION RE: JAMIRA B.
Procedural History
On July 1999, baby Jamira B., daughter of James B. Mary P. was born with cocaine in her urine. On July 8, 1999, DCF invoked a 96 hour hold and the baby was placed in foster care. On July 12, 1999, an OTC and neglect petitions were filed by DCF. On July 16, 1999, the OTC was sustained. On October 14, 1999, judgment was entered on both parents and Jamira was adjudicated neglected and committed to DCF.
On November 17, 2000, the Department of Children and Families filed a petition for termination of parental rights. The parents of Jamira B. Mary P. and James B. objected to that petition and that petition is the focus of today's hearing.
The court finds that both parents, Mary P. and James B. were given notice of today's proceedings. The file reflects that notice was made on November 27, 1999, to the mother and on November 29, 1999, to the father. Both parents were present at the termination of parental rights hearings.
Before discussing the adjudication, the court will make the following findings regarding reasonable efforts of DCF to reunite the B/P family. The court finds by clear and convincing evidence that DCF attempted to reunify the parents with Jamira B. In this case, DCF attempted to reunify by referring the parents to drug treatment between July of 1999 and September of 1999. DCF referred Mary P. to Cross Roads Treatment Center and Perception House. Ms. failed to attend any of these sessions and failed to reschedule those missed meetings. In September 1999, Ms. in was incarcerated. CT Page 11685
DCF referred Mr. B. to Saint Raphael's Hospital Substance Abuse Center and he failed to go and thereafter failed to reschedule those missed meetings. Since September of 1999, DCF has only known the whereabouts of father on a sporadic basis.
A hearing of termination consists of two phases judicatory and dispositional. In the case at hand, the state is alleging, first, abandonment, that the parents failed to maintain a reasonable degree of interest, concern or responsibility for their daughter Jamira B. Second, the state is alleging failure to achieve, personal rehabilitation, and third, that there is no ongoing parent/child relationship. As to ground (a), abandonment of Jamira B. by Mary P. the court heard testimony from DCF social workers Antoinette Johnson and Frances Satterfield.
Ms. Johnson testified that upon placement Ms. was offered weekly supervised visits with Jamira. Mother missed four of seven of those visits between July and August, 1999.
In addition, DCF social worker Frances Satterfield testified that after mom's incarceration in September of 1999, mother Mary in sent no gifts or cards to Jamira. While Ms. Satterfield conceded that there were supervised visits between June, 2000, and June, 2001, she testified that they were initiated by DCF and that mom only initiated contact after Jamira had bonded with her foster family.
The court finds the social worker to be a credible and reliable witness. The state has sustained its burden by clear and convincing evidence that the mother failed to maintain a reasonable amount of interest in Jamira prior to her incarceration.
As to ground (a) abandonment of Jamira in by her father James B., the court again relies on the testimony presented by social workers Johnson and Satterfield.
Ms. Johnson testified that the father missed three of seven DCF offered visits between July and August of 1999. Thereafter, visitation was sporadic at best with Mr. B. attending only one visit between August, 1999 and June, 2000. Thereafter, visits were rescheduled four times between June and August, 2000 and Mr. B. failed to keep those dates. On the dates he did keep, July 31, 2000 and September 10, 2000, Mr. B. could not remain awake. Since September of 2000, Mr. B. failed to visit Jamira except for a birthday visit in July of this year 2001.
Based on this testimony which the court finds again credible and reliable, the court feels that Mr. B. has failed to maintain a reasonable degree of concern for Jamira's welfare. CT Page 11686
As to ground (b), failure to achieve personal rehabilitation, the court again relies on the testimony of the two previous witnesses DCF social workers Johnson and Satterfield. They both testified regarding the specific steps that were ordered for the father and mother.
As to the mother, Miss Johnson testified that Ms. Z violated a number of the specific steps by failing to get drug treatment as ordered by DCF and failing to cooperate with DCF programs. In addition, Ms. failed the step of no further involvement with the criminal justice system by being incarcerated for two years on possession of narcotics charges in September, 1999.
As for the father, he also failed to comply with the specific steps by missing drug treatment and failing to keep his whereabouts known to the Department of Children and Families. Based on this testimony, which again the court finds credible, the trial court finds the mother and father failed to achieve such a degree of personal rehabilitation that would encourage the belief that within a reasonable period of time they could assume a responsible role in Jamira's life.
As to the ground of no ongoing parent/child relationship, the court relies again on the testimony of the two aforementioned social workers, Ms. Johnson and Ms. Satterfield. Miss Johnson testified that after being born with cocaine in her system, Jamira was immediately placed with a foster family. Jamira has been with that family for two years. Miss Satterfield testified that Jamira has bonded with her foster family. She testified that while visits between Jamira and her mother have improved, they are still at times strained and characterized by a lack of affection and indifference exhibited by Jamira toward her mother. In comparison, the social worker testified Jamira exhibits a great deal of affection toward her foster family.
In regard to the father, social workers Antoinette Johnson and Frances Satterfield testified that except for sporadic visits between July, 1999 and the present, James B. has never visited Jamira on a consistent basis and hence, no bond had developed between father and daughter.
The court finds the testimony of the social workers to be credible and reliable. The state has sustained its burden by clear and convincing evidence that there is no ongoing parent/child relationship between Jamira B. and James B. or Mary P.
Dispositional Phase
It is axiomatic that in the dispositional phase, the trial court must CT Page 11687 determine that the continuation of parental rights is not in the best interest of the child. In Re: Tabitha's 39 Conn. App. 361, (1995). In addition, the court must consider and make the following statutory findings required by C.G.S. § 17a-112d.
Finding number one, appropriate and timely services were provided by DCF to Ms. and Mr. B. These services included counseling, transportation, assistance, visitation, coordination and drug rehabilitation services. Mother and father declined or refused those services.
Finding number two, the court finds by clear and convincing evidence DCF made reasonable efforts to reunify parents with the child. DCF offered both drug treatment and visitation and neither parent took advantage of these services.
Finding number three, the department, with the approval of the court, set reasonable and realistic specific steps to facilitate reunification of the family. There was little or no compliance by the parents.
Finding number four, the child has bonded with her foster family and the family has provided the physical, emotional and educational support that the child needs. Jamira was removed at birth and has had little or no contact with her father and contact with mother was nonexistent until after she had bonded with her foster family. Jamira's foster family has indicated a willingness to adopt her.
Finding number five, Jamira is two years old and according to Doctor Franklin's testimony she requires stability, permanency and continuity of care. Attorney Wallace who represents the child endorses the termination of parental rights.
Finding number six, the court finds that the parents have not made any real or sustained efforts to conform their conduct to minimally acceptable standards and giving them additional time is not likely to make their performance satisfactory.
Finding number seven, the respondents contend that they have improved their conduct so that it would not be in the best interest of Jamira to terminate their parental rights. The mother claims that her participation in the Neon House drug treatment facility bears this out. The father claims he is now ready to assume his fatherly responsibilities based on his visit to Jamira's second birthday party. The trial court feels these arguments are without merit.
Ms. P. participation at Neon House, which is under the control of the CT Page 11688 Connecticut Department of Corrections, is compulsory and part of her parole status. This status could be revoked if she fails to participate and she could be returned to prison. Looking at her past failures at drug treatment when there was no potential penalties of incarceration, the court feels any participation now is done solely to avoid jail and not to change her life. It is in the court's view an example of too little too late.
As to the father the court feels that the inconsistent visitation and the erratic behavior during the attended visits are clearly not in the best interest of Jamira. The court heard from several social workers that DCF attempted to encourage contact and did so by trying to facilitate visitation. The court notes no unreasonable conduct by DCF.
The court finds that based upon the testimony and evidence presented that it would be in Jamira's best interest to terminate the parental rights at this time. This finding is made after careful consideration of the need for the relationship she has with her foster parents and totality of the circumstances that the termination of parental rights are in the child's best interest.
It is the court's order that parental rights of Mary P. and James B., the parents of Jamira, are hereby terminated. DCF is appointed statutory parents and a permanency plan shall be submitted within sixty days.
Earl B. Richards, III, Judge