Memorandum of Decision
On September 29, 1998, the Department of Children and Families (DCF) filed a petition to terminate the parental rights of Tyree D. and Tiffany H. to their minor daughter, Tyscheicka H. On October 12, 13, 14, and 27, 1999, a consolidated trial of the termination petition, the mother's motion to revoke commitment, and the mother's petition to transfer guardianship to the foster mother took place in this court. On October 13, the father, Tyree D., consented to the termination of his parental rights. For the reasons stated below, the court now grants the termination petition in its entirety and denies the mother's motion and petition.
FACTS
CT Page 14524
The court finds the following facts and credits the following evidence. Tyscheicka was born out of wedlock on February 14, 1997. The father, Tyree D., was seventeen at the time. He had little involvement in Tyscheicka's life thereafter.
The mother, Tiffany H., was also seventeen when Tyscheicka was born. Tragically, she and Tyscheicka represent the fourth and fifth generations of her family with state child welfare agency involvement. Tiffany's mother has had a drug problem of long duration. Tiffany grew up without sufficient food, clothing, and supervision. She was sexually assaulted at age twelve. She dropped out of school after the eighth grade. She started smoking marijuana at age fifteen and occasionally using alcohol at age sixteen. Tiffany had no role models from which to learn about proper parenting.
Not surprisingly given her parents' background, Tyscheicka began to experience problems shortly after birth. In May, 1997, Tyscheicka was admitted to a hospital for acute febrile illness and shock due to loss of fluids from vomiting and diarrhea. At that time doctors developed a concern about the mother's maturity and her ability to care for the child. Approximately one month later, a visiting nurse reported to DCF that the mother and baby were hard to locate. When the mother was located, the nurse observed that the mother lacked necessities such as a crib, diapers, and a thermometer.[2] Tyscheicka had lost one pound over the previous several weeks. The mother was unwilling to show the nurse the formula given to the baby.
On June 30, 1997, DCF filed a neglect petition and obtained temporary custody of the baby. On September 4, 1997, the court adjudicated Tyscheicka neglected and committed her to DCF custody for a period of one year. The court has annually extended the commitment thereafter. The current commitment expires September 4, 2000.
DCF referred the mother to a number of social service programs in accordance with court-ordered expectations. At Catholic Family Services, the mother regularly attended a family connections program but, in April, 1998, the agency concluded that family reunification was not advisable. The agency reported, after monitoring numerous parent-child visits, that the mother did not show sensitivity to her child's cues and needed to attend individual counseling, participate in job training, and complete a GED program. At an outpatient drug treatment center, the mother CT Page 14525 tested positive for marijuana from February, 1998, to October, 1998, and once tested positive for phencyclidine (a tranquilizer known as "angel dust") and cocaine. The mother failed to participate in or benefit from five other parenting, substance abuse, or GED programs. The mother was occasionally late for or under the influence of drugs at visits with Tyscheicka and the mother did not interact enthusiastically with her child during those visits. Unemployed and without adequate housing for her child, the mother spent much of her time sleeping.
In January, 1999, the mother voluntarily entered Coventry House, an inpatient drug program for women who are pregnant or who have small children. Since then, the mother has consistently tested negative for drugs. In March, 1999, the mother gave birth to her second child, a girl named Tanyjzah. The mother's interactions with Tiffany have improved and Tiffany seems to enjoy the visits. Tyscheicka calls the mother "Mommy." The mother has also been caring well for Tanyjzah. The mother has begun individual counseling, after having previously failed to pursue it. The mother has started taking GED classes, although she is not yet eligible to take the exam.
The mother would like to leave Coventry House in January, 2000. She has applied for both supportive housing, where staff members assist the residents with living skills, and independent apartments. Coventry House has no definite plans to discharge the mother in January, 2000 and would prefer that, upon discharge, the mother move into supportive housing, rather than independent living.
The mother testified at trial. The court finds her to be dishonest, immature, and unreasonably bitter about DCF involvement in her life. She advanced the belief that, despite the lack of a job, a high school or GED degree, and an adequate apartment, she would be in a position to care for both Tyscheicka and Tanyjzah within several months after leaving Coventry House.
DCF originally placed Tyscheicka in her current placement in June, 1998. DCF removed Tyscheicka in August, 1998 due to a foster care licensing problem but then returned her to this home in October, 1998. She has remained there under the care of her foster mother, Suzette S. Tyscheicka is in good health and has formed a bond with Suzette. Suzette gives her much attention. They enjoy reading and playing in the backyard. Tyscheicka also calls Suzette "Mommy."[3]
CT Page 14526
Suzette would like to adopt Tyscheicka because Suzette loves her very much. Suzette is not agreeable to accepting a transfer of guardianship. She does intend to explain to Tyscheicka that she has two mothers who love her. Suzette has facilitated additional visitation with the mother and would agree to continue this practice after adoption.
TERMINATION ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." General Statutes § 17a-112(c)(1).[4] Under General Statutes § 17a-112(c)(1), however, the court need not make a reasonable efforts finding "if a court has determined at a hearing pursuant to subsection (b) of section 17a-110 or 17a-111b
[dealing with permanency planning for committed children] that such efforts are not appropriate." General Statutes §17a-112(c)(1). In this case, the court made such a finding on August 4, 1998.[5]
B. Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See Inre Michael R., 49 Conn. App. 510, 512, 714 A.2d 1279, cert. denied, 247 Conn. 919, 722 A.2d 807 (1998); General Statutes § 17a-112(c)(3). In this adjudicatory phase, the court is ordinarily limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a).
There being no material amendments to the petition, the adjudicatory date in this case is September 29, 1998. DCF has alleged the ground of failure to rehabilitate against the mother. The court finds that DCF has proven its allegation by clear and convincing evidence.
The ground of failure to rehabilitate arises when "the parent of a child who has been found by the Superior Court to have been CT Page 14527 neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112(c)(3)(B)(1). No dispute exists that the court adjudicated Tyscheicka neglected on September 4, 1997, thus satisfying one element of the statute.
The rest of the statute requires the court to find whether the parent has achieved "such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112(c)(3)(B). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable `within a reasonable time.'"In re Luis C., 210 Conn. 157, 167, 554 A.2d 722 (1989). The statute, however, does not require parents to "be able to assume full responsibility for [a] child, unaided by available support systems." In re Juvenile Appeal (84-3), 1 Conn. App. 463, 477,473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). Because of the requirement that the court predict what will happen within a "reasonable time" after the filing of the termination petition, it is sensible to conclude that the court can consider not only the parents' conduct before the filing of the termination petition, but also the conduct occurring after it.
The evidence clearly and convincingly establishes that the mother failed to rehabilitate during the adjudicatory period. She did not complete a GED program, secure adequate housing, or obtain a job. She persisted in using illegal drugs. Although she attended Catholic Family Services, she did not benefit from the program and did not receive a favorable recommendation. She did not participate in or benefit from five other social service programs. The quality of the mother's visits with Tyscheicka was poor. Accordingly, the court finds that DCF has proven the ground of failure to rehabilitate.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing CT Page 14528 evidence that "termination is in the best interest of the child." General Statutes § 17a-112(c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
The best interest of Tyscheicka H. clearly and convincingly requires termination of the parental rights of her mother. The mother failed to rehabilitate during the adjudicatory period. It is true that, after DCF filed the termination petition, the mother voluntarily enrolled in Coventry House and has made progress there. She has been drug-free for one year. Her relationship with Tyscheicka has improved and she is providing adequate care to Tanyjzah. But the mother has no history of being drug-free on her own or of being able to support her children outside of a structured environment like Coventry House. The mother has no specific plan for living independently with her children. Her belief that she could begin to obtain an education, an apartment, and a job within several months after leaving Coventry House is unsupported by specific achievements or commitments. She has had enough time to make progress on these issues. Her courtroom testimony, moreover, did not impress the court that she has the maturity, industry, and responsibility necessary to succeed on her own with two young children.
Tyscheicka should not have to wait any longer for the uncertain prospect of her natural mother's rehabilitation. She has been in foster care for over two years and in the same foster home for about fourteen months. Now over two and one-half years old, Tyscheicka is entitled to a permanent home where she can prosper. The court is convinced that the foster mother, Suzette S., will provide such a home. Suzette has rendered excellent care to Tyscheicka to date. Suzette is a mature, self-sufficient person, with a warm personality, and a true love for Tyscheicka. Suzette, moreover, has taken and intends to continue an enlightened approach to termination by permitting continued contact between Tyscheicka and her natural mother. This court is "not prepared to assume that the welfare of children is best served by a narrow definition of those whom [it] permit[s] to continue to manifest their deep concern for [their] child[ren]'s growth and development." Michaud v. Wawruck, 209 Conn. 407, 415,551 A.2d 738 (1988).[6]
In arriving at a decision, the court must consider and make written findings regarding seven factors set out in General Statutes § 17a-112(e). See In re Tabitha P.,
CT Page 1452939 Conn. App. 353, 362, 664 A.2d 1168 (1995). A discussion of these factors follows.
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
Based on the foregoing discussion, the court finds that DCF provided visiting nurse services and, upon removal, foster care for Tyscheicka and visitation to the mother. DCF referred the mother to drug treatment and evaluation, a family reunification program, a psychological evaluation, a GED program, and several other social service agencies. These services were relevant to the mother's needs and were offered in a timely manner.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
Based on the foregoing discussion, the court finds that DCF offered the mother appropriate services and guidance, and sufficient time to permit family reunification.
3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
On July 10, 1997 and August 8, 1997, the court entered the following specific steps and expectations for the mother to meet: (1) keep all appointments set by or with DCF, (2) keep whereabouts known to DCF and your attorney, (3) visit the child as often as DCF permits, (4) participate in counseling (parenting, individual, and drug/alcohol assessment) 5) follow recommendations of the drug and alcohol assessment, 6) cooperate with in-home services, 7) sign releases as requested, 8) secure and maintain adequate housing and income, 9) no substance abuse, 10) no involvement with the criminal justice system, 11) cooperate with court-ordered psychological evaluation and follow recommendations, and 12) cooperate with the child's medical appointments and follow-up as required. As detailed above, DCF substantially met its obligation to provide assistance. The mother's compliance with these expectations was inadequate, especially in the areas of substance abuse treatment, obtaining individual counseling, and maintaining adequate housing and CT Page 14530 employment.
4) The feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
As stated above, Tyscheicka is closely bonded to her foster mother. She also has positive feelings for and recognition of her natural mother but does not regard her as her psychological parent.
5) The age of the child.
Tyscheicka will be three years old in February, 2000.
6) The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Based on the foregoing discussion, the court finds that the mother did not adjust her circumstances in time to make it in the Tyscheicka's best interest to return to the mother's home. The mother did maintain regular visitation, although the quality of the visits was poor prior to 1999.
7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
As discussed above, the mother's difficulties stem primarily from her own lifestyle choices and not from unreasonable interference of other persons or economic circumstances beyond her control. Although Tiffany entered motherhood as a disadvantaged youth, DCF and other agencies offered to help her, and she did not take full advantage of the help offered. CT Page 14531
CONCLUSION
Based upon the foregoing findings, the court determines that it is in the best interest of Tyscheicka H. for a termination of parental rights to enter with respect to the mother, Tiffany H. Given that the father, Tyree D., has consented to the termination of his parental rights, and that the court has found that such termination is in Tyscheicka's best interest, the court now grants the petition to terminate parental rights in its entirety. For the reasons stated, the mother's petition to transfer guardianship is denied. The mother's motion to revoke commitment is denied as moot. The court orders that the Commissioner of DCF is appointed statutory parent for Tyscheicka for the purpose of securing an adoptive family. If the current foster mother is willing to adopt, it is the court's direction that she receive first consideration. The Commissioner shall file with this court no later than 90 days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
It is so ordered.
Carl J. Schuman Judge, Superior Court