MEMORANDUM OF DECISION
On February 8, 1999, the Commissioner of the Department of Children and Families (DCF) filed petitions to terminate the parental rights of Clarissa A., mother of all the children; and Mark B., putative father of Joseph B.; Chris E., putative father of Taquana B.; Daryl Joseph B., putative father of Vernon C.; and Kenneth T., father of Alicia T. and Deshaun T. The court finds that the mother, Clarissa A., has appeared and has a court appointed attorney. The court finds that the father, Kenneth T., has also appeared and has a court appointed attorney. The remaining putative fathers, Mark B., Daryl Joseph B., and Chris E., were duly served and notified of the pendency of the petitions. None of them appeared and defaults were entered as to all three putative fathers.[2]
The mother does not object to the termination of her parental rights. A consent to terminate parental rights was filed by the mother. Her consent was found to be voluntarily and knowingly made with the advice and assistance of competent legal counsel and with a full understanding of the consequences of her consent.
The court finds that the fathers, Mark B., Chris E., and Daryl Joseph B., have failed to appear for trial. The fathers have been served and have never appeared in any court hearing. With respect to Kenneth T., father of Alicia T. and Deshaun T., he has appeared and has court appointed counsel. The court has jurisdiction in this matter, there is no pending action affecting custody of the children in any other court, and reasonable efforts have been made to reunify this family. CT Page 13436-as
The day of trial the mother entered her consent. The father, Kenneth T., was present with his court appointed attorney. The father's attorney requested the court to render its decision on the written evidence that was to be entered. Kenneth T. vacillated as to whether he was going to consent to having his rights terminated. After some discussion, the court agreed to render its decision solely on the admitted written evidence. It was clear that the father could not bring himself to voluntarily consent to a termination of his parental rights. He knew that he had not complied with the court expectations and also knew the petitions for the termination of parental rights were likely to be granted.
The court having read the file, the verified petitions, and the social study entered into evidence and having taken judicial notice of the court expectations issued to the father, Kenneth T., on June 20, 1997 and on September 18, 1997, makes the following findings by clear and convincing evidence.
The youngest child, Deshaun T., came into the care of DCF on April 30, 1997 when a 96 hour hold was put into effect based on a referral that Deshaun had a serious respiratory condition that was not being treated. On July 24, 1997 the court adjudicated him neglected and uncared for and committed him to DCF. During an office visit for the mother with Deshaun, the other children were observed to have dirty clothing, uncombed hair and were generally unkempt. One of the children, Vernon, became quite ill during the visit. Subsequently, the social worker performed a visit at the home and observed the home to be unsafe and unclean. A ninety-six hour hold was invoked on the four other children. On September 22, 1997, the children were adjudicated neglected and were committed to DCF. All the children have remained in DCF custody from the date of their commitment to the present date.
Mark B., the father of Joseph, has never been involved in his child's life since Joseph's birth. He has neither consented to DCF having his address and/or number nor has he attempted to contact DCF. He has not contacted Joseph nor has he sent him any cards, gifts, letters, etc. He has not made any attempt to have a relationship with his son. Joseph has been with the same foster family since December, 1997.
Chris E., the putative father of Taquana, is whereabouts unknown. He has not had any contact with his daughter since her birth. He has never contacted DCF with regard to her nor has he made any effort to provide for Taquana. Taquana has been with the same foster family since 1998. She is the only child who exhibits some bond with her mother. CT Page 13436-at
Daryl Joseph B., the putative father of Vernon C., denies paternity of the child. At one court hearing the mother stated that Daryl's brother, Carl, was the father of Vernon. DCF was ordered to have a paternity test performed on Daryl Joseph and his brother Carl. Neither one attended the paternity test. The court did order service of the termination petitions be made on both Daryl Joseph B. and Carl B. even though it did not have proof of paternity. Needless to say, neither one has made any effort to become a part of Vernon's life and has not contacted him nor DCF.
Vernon has been with the same foster family since December, 1997, and is placed with his brother, Joseph. He regards his foster mother as "mom" and does not inquire about his natural mother.
Kenneth T., is the father of Alicia and Deshaun, and the step-father of the remaining children. He is the only father who has participated in these proceedings. He was born on September 17, 1964 in Hartford and reports that he attended and graduated from Hartford public schools. Kenneth is plagued by chronic substance abuse and on two occasions, once in December, 1997 and once in April 1998, he voluntarily attended a detoxification program. He also has a limited criminal record consisting of a larceny charge and several failures to appear. His last arrest for failure to appear caused him to be incarcerated for a brief time and he is presently on probation until April 22, 2002.
Court expectations were ordered for Kenneth T. on June 20, 1997 with regard to Deshaun and a second set of expectations were ordered on September 22, 1997 with regard to Alicia. He had little to no compliance with any of the expectations. On several occasions he informed the social worker that short of visiting his children he would not participate in any services offered or meet with the social worker. He was inconsistent with his visits and because of the inconsistency an agreement was reached that he would notify DCF on the day before his visit whether he would be attending that week's visit. He contacted DCF once in May 1999 to have a visit.
When he did participate in a preschool intervention program, he attended consistently for a three month period. While at the program, Kenneth T. demonstrated that he had the necessary skills to interact with and meet the needs of his children, Alicia and Deshaun. Through ongoing conversations with the program coordinator, Kenneth informed her of the negative influences in his life. The court is convinced that the main negative influence in his life was and continues to be his substance abuse. Although he did attempt to address it through two detoxification stays in area treatment facilities, he did not follow through with the CT Page 13436-au recommendations of inpatient treatment nor would he participate in any substance abuse treatment program.
No evidence was presented of any relationship between Alicia and Deshaun and their father.
 TERMINATION ADJUDICATION
Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. § 17a-112
(c)(1). As to putative fathers Mark B., Chris E., and Daryl Joseph B., the court finds by clear and convincing evidence that DCF made reasonable efforts to locate the fathers and that the fathers were unable or unwilling to benefit from any reunification efforts. As to father Kenneth T., the court finds by clear and convincing evidence that DCF made reasonable reunification efforts by providing services to him in which he was unwilling to participate. He has done very little to nothing towards reunification with his son and daughter.
Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See in re Michael B.,49 Conn. App. 510, 512 (1998), cert. denied, 247 Conn. 919 (1998). Conn. Gen. Stat. § 17a-112 (c)(3).
DCF has alleged the grounds of abandonment, failure to rehabilitate and no ongoing parent child relationship as to Mark B., Chris E. and Kenneth T. and the grounds of abandonment and no ongoing parent child relationship as to Daryl Joseph B. As to the mother, Clarissa A., in view of her consents, no findings need be made.
The court disposes summarily of the grounds of abandonment and no ongoing parent child relationship against Mark B., Chris E. and Daryl J. None of the these fathers have had any relationship or even contact with their respective children since each of their birth. Accordingly, the court finds that Mark B., Chris E., and Daryl Joseph B. have abandoned their respective children, Joseph B., Taquana and Vernon C., "in the CT Page 13436-av sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the children, General Statute § 17a-112 (c)(3)(A), and that there is "non ongoing parent-child relationship, which means the relationship that develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." Conn. Gen. State § 17a-112 (c)(3)(D). The court finds that DCF has proven those two grounds by clear and convincing evidence. The court will not act on the failure to rehabilitate ground as to fathers Mark B., and Chris E.
The father, Kenneth T., is the only father who participated, albeit very limited, in these proceedings. His participation in the lives of his children is negligible. Although he has expressed his desire to remain active, he has not made any efforts or is he in any position to parent his children in a meaningful way. The courts find by clear and convincing evidence that Kenneth T. has abandoned his children in the sense that he has failed to maintained a reasonable degree of interest, concern, or responsibility as to the welfare of his children and that there is no ongoing parent-child relationship.
The ground of failure to rehabilitate arises when "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsibility position in the life of the child." Conn. Gen. Stat. § 17a-112 (c)(3)(B). Alicia T. and Deshaun T. were adjudicated neglected on September 22, 1997, (McLachlan, J.) thus satisfying one element of the statute.
The rest of the statute requires the court to find whether the parent has achieved "such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the lief of the child." Conn. Gen. Stat. § 17a-112 (c)(3)(B). The statute requires the court to analyze the parent's rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable "within a reasonable time." In reLuis C., 210 Conn. 157, 167, 554 A.2d 722 (1989). "In assessing rehabilitation, the critical issue is not whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has CT Page 13436-aw gained the ability to care for the particular needs of the child at issue." In re Danuael D., 51 Conn. App. 829, 840, 724 A.2d 546 (1999). The statute, however does not require a parent to "be able to assume full responsibility for [a] child, unaided by available support systems." Inre Juvenile Appeal (84-3), 1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984).
By these standards, Kenneth T. has clearly failed to rehabilitate. He has a poor record of compliance with court expectations. He did not attend any of the recommended programs in order to address his substance abuse. Although there was evidence that he attended two detoxification, there was no evidence of his commitment or willingness to further address his substance abuse or alcoholism. Finally, he has little to no relationship with his children. DCF has accordingly proven failure to rehabilitate by clear and convincing evidence.
 DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn. Gen. Stat. § 17a-112 (c)(2); In re Juvenile Appeal (83-CD), 189 Conn. 276, 285,455 A.2d 1313, (1983). The court can consider all events occurring through the close of the dispositional hearing. See Practice Book §33-5.
Under these standards, the parental rights of the three fathers should obviously be terminated. Mark B., Chris E., and Daryl Joseph B. are complete strangers to their children. Kenneth T., although he has had some contact with his children, he has failed to develop a meaningful relationship with his children. Moreover, he has failed to rehabilitate himself and there is no reason to believe that he can ever assume a meaningful parental role in his children's lives.
In arriving at a decision, the court must consider and make written findings regarding seven facts set out in General Statutes § 17a-112
(d). See, In re Tabitha P., 39 Conn. App. 353, 362, 664 A.2d 1168
(1995). These factors serve only to guide this court in making the ultimate decision whether to grant the termination petition and no one finding is a prerequisite. See, In re Eden F., 250 Conn. 674, 741 A.2d 873
(1999). A decision of these factors follows.[3]
1) The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the CT Page 13436-ax child with the parent.
Appropriate and timely services were provided by the Department of Children and Families including counseling, case management, transportation assistance, and visitation coordination to Kenneth T. The services provided are more fully set forth in the Social Study which has been placed into evidence.
Three of the fathers have been whereabouts unknown since the commencement of the department's involvement in this case. Although DCF made dingent efforts to locate these men, their whereabouts remain unknown. Therefore, it was not possible to offer services for reunification to the fathers. The services as described in the Social Study were appropriate and offered on a timely basis.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
Based on the foregoing discussion, the court finds that DCF has made reasonable efforts given the situation and circumstances to reunify Kenneth T. with his children. The court finds that DCF was unable to make efforts to reunify Mark B., Chris B., and Daryl J., with their respective children due to their whereabouts being unknown.
3) The terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
Regarding court orders, fulfillment of obligations, expectation and services agreements, DCF, with the approval of the court, set reasonable and realistic expectations to reunify Kenneth T. with his children, which expectations had minimal compliance. The court did not enter expectations or specific steps for Mark B., Chris E., and Daryl Joseph B., because they did not attend any of the court hearings and their whereabouts were unknown.
4) The feelings and emotional ties of the child with respect to his/her parents, any guardian of his/her person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
Based on the foregoing discussion, the court finds that all five children are bonded to their respective foster parents. The children have CT Page 13436-ay no relationship with their respective fathers.
5) The age of the child.
Joseph B. is nine years and eleven months old. Taquana B. is eight years old. Vernon C. is six years old. Alicia T. is 5 years and ten months old. Deshaun T. is three years and ten months old and has lived his life in foster care since the age of six months. The other four children have been in foster care for the past three years.
6) The efforts the parent has made to adjust his/her circumstances, conduct, or conditions to make it in the best interest of the child to return him/her to his/her home in the foreseeable future, including, but not limited to:(A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.)
Based on the foregoing discussion, the court finds that these fathers have made little to no effort to adjust their circumstances to permit their children to safely return to their care; they have failed to maintain contact with their children or with DCF. Kenneth T. is the only father who had any contact with his children, and his history of visitation was sporadic and virtually nonexistent.
7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent.
Based on the foregoing discussion, there is no evidence that the unreasonable act or conduct of DCF personnel or any other person prevented the respondent fathers and mother from maintaining a meaningful relationship with their children. None of the putative fathers faced any unreasonable interference from anyone or from economic circumstances. As to Kenneth T., his difficulty stems primarily from his own lifestyle choices and not from unreasonable interference or from economic circumstances.
 CONCLUSION
The court having considered all statutory considerations and having CT Page 13436-az found by clear and convincing evidence that grounds exist for termination of parental rights, further finds upon all of the facts and circumstances presented, that it is in the child's best interest to terminate the parental rights of Clarissa A., Mark B., Chris E., Daryl Joseph B., and Kenneth T. Accordingly, the court hereby grants the petitions to terminate the parental rights of Clarissa a., Mark B., Chris E., Daryl Joseph B., and Kenneth T.
The court further orders that the Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the purpose of securing an adoptive family or other permanent placement for Joseph B., Taquana B., Vernon C., Alicia T., and Deshaun T. The Commissioner shall file with the court, no later than sixty (60) days following the date of judgement, a written report toward such permanent placement and file such further reports as are required by state and federal law.
It is so ordered.
Swienton, J.