[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Zoraida S. and Hector M., the biological parents of Chaquira M., born December 3, 1997. The petition was filed February 23, 2000, by the commissioner of the Department of Children and Families (hereinafter referred to as "DCF"). The only non-consensual statutory ground alleged by DCF in the petition against both the mother and the father is parental failure to rehabilitate.
Service was confirmed on both the mother and the father at the plea date of March 23, 2000. The mother appeared on that date and counsel was appointed to represent her. The father did not appear and a default entered. The court finds that notice of this proceeding has been provided in accordance with the Practice Book[1] and this court has jurisdiction. There is no action pending in any other court affecting custody of the child.
The court having read the verified petition and the social study and addendum and heard the testimony of Michael Palmer, DCF social worker, Deborah Reed, DCF social worker, and Carmen Brouillet, DCF social worker, makes the following findings. Counsel for the child and counsel for the respondent mother participated fully in the trial, but neither offered any evidence or testimony.
 FACTS
CT Page 1137
The child, Chaquira M., was born on December 3, 1997, testing positive for cocaine. In addition, the mother tested positive for long-term exposure to cocaine. The mother did not comply with prenatal care during the pregnancy and has a history of mental illness. The father admitted to drug use as well as disclosed an arrest for possession of narcotics with intent to sell. An order of temporary custody was signed by the court on December 9, 1997 (McLachlan, J.) and a neglect petition was also filed on that day, alleging that the child would be permitted to live under conditions, circumstances, or associations injurious to her well-being and also that she was uncared for in that her home cannot provide the specialized care which she requires.
Chaquira M. was adjudicated neglected and uncared for on February 24, 1998, and committed to the commissioner of the Department of Children and Families for a one year period. Neither the mother nor the father appeared for the trial, however their court appointed counsel, who had been appointed for both parents in the neglect/uncared for proceeding, were present and the trial went forward. Specific steps for reunification signed December 9, 1997, were ordered as court expectations. Subsequently, DCF was granted an extension of the commitment on February 23, 1999 with the plan being reunification of Chaquira with her parents. However, at an in court judicial review held on August 24, 1999, the court was informed that the parents were not in compliance with the specific steps and DCF was planning to file petitions for the termination of parental rights.
On January 25, 2000, an extension of the commitment was granted. The court ordered DCF to file the termination of parental rights petition, noting that the child had been in foster care for over two years. At that hearing, the court also made a finding that continued efforts toward reunification were no longer appropriate. (Keller, J.)
The mother, Zoraida S. was born in Juncos, Puerto Rico, and reports having a painful childhood due to her parents continued domestic disputes. She was diagnosed as a developmentally delayed child, placed in a special education program, and dropped out of school in the fourth grade. She has no marketable skills and self reports that she had been in treatment for mental health issues in the past. DCF social worker Brouillet noted the mother's serious cognitive limitations as a presenting issue in the case which would prevent her from parenting the child. However, other than that testimony and the mother's self reports, the court had no evidence before it that the mother in fact has such an inability to parent based on cognitive limitations.
Brouillet met Zoraida in December, 1999. At that time, Zoraida was not involved in any program and she did not go out of the home. Zoraida CT Page 1138 wanted her child returned to her, but refused to believe she needed to be in any program. Brouillet went over the court ordered expectations with Zoraida and told her to call for referrals for services, but Zoraida never did.
The father was also born in Puerto Rico and raised by his biological parents. A high school graduate, he has been trained as a plumber and an auto mechanic but has an inconsistent work history.
Both the mother and the father have admitted to the use of cocaine, but minimize their use and impact on their lives. DCF referred the parents to the Institute for Hispanic Families for an evaluation and treatment, however neither the mother nor the father completed a substance abuse program. In the initial stages, they attended on a regular basis, but stopped when they started testing positive for cocaine. The mother's counselor reported that the mother was invited back for a more intensive treatment program, but she did not show. Neither parent has ever completed a substance abuse program.
The parents were also referred to Catholic Family Services for a reunification program, namely a parenting class and visitation. Some progress was made at that program and the social worker thought the parents would eventually be able to have custody of their daughter if they continued to make their visits and abstain from substance abuse.
In consultation with Catholic Families Services, DCF terminated the services being offered to the parents at that agency. The referral to that agency was based upon compliance with other services the parents were to participate in, and after they started testing positive for cocaine and began to miss visits with their child, DCF told Catholic Family Services not to offer any more services.
The parents were allowed supervised weekly visitation. At the beginning of this case, the parents participated in the weekly visitation and were reported to demonstrate emotional attachment and appropriateness. Their commitment to the visitation quickly waned, and they began to miss visits with the child and when they did visit, they did not stay for the entire hour. The father has not visited with Chaquira since February, 2000, although at one point she showed more attachment to him than to her mother.
The mother was sporadic with her visitation and did not begin to participate fully in the visits until recently. Deborah Reed, DCF social worker who transported Chaquira to the DCF office, observed and supervised the visits since February, 2000. She observed little to no positive interaction between Chaquira and her mother. The mother did not CT Page 1139 reach out to her baby, she did not caress or kiss her. She does try and talk to her, but Chaquira acts as if she couldn't be bothered.
Brouillet was more emphatic about the lack of bonding between Chaquira and her mother, describing the visits as "torture" for the child. There is no bonding, no positive interaction, and the child receives nothing out of the visits. Chaquira brings her coat to Brouillet and wants to leave as soon as the visits begin.
The parents do not send Chaquira any cards, letters or gifts. They fail to attend any of the administrative case reviews, although they are notified of the schedule and invited to attend. They never called the social worker or the foster parents to inquire as to the child's health or well being.
Chaquira although born testing positive for cocaine, exhibited no signs of drug addiction or withdrawal, and was described as not a "typical cocaine baby". She has been placed at three separate foster homes since her birth, with one of her placements lasting almost two years. She was removed from that home eleven days prior to the commencement of the trial because the foster mother could not adopt her. This fourth placement is yet to be a pre-adoptive home, and the reason given for why Chaquira is not in a pre-adoptive home even though the plan has been termination of parental rights and adoption since August, 1999, is paperwork and lack of time, according to Brouillet. Thankfully Chaquira is healthy and developmentally on target.
 TERMINATION ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF "had made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." General Statute § 17a-112(c)(1). The court, however, need not make a reasonable efforts findings "if a court has determined at a hearing pursuant to subsection (b) of Section17a-110 or Section 17a-111b [dealing with commitment extension hearings and permanency planning for committed children] that such efforts are not appropriate."
The evidence clearly supported this finding. It was a finding not appealed from and therefore a final judgment. The statute cited relieves this court from making any finding regarding DCF's efforts toward reunification. CT Page 1140
Notwithstanding that judgment of the court, DCF did the absolute minimum to help this mother. Although there was evidence that she had mental health issues, no referral to any mental health provider was made. The only services offered to this mother were minimal visitation assistance and one referral to the Institute for Hispanic Families with no follow-up for her substance abuse problem. It is not clear whether either parent could have ever benefitted from more services, but DCF never gave them the opportunity to find out.
B. Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear evidence that one of several statutory grounds for termination exists. See In re Michael B., 49 Conn. App. 510, 512,714 A.2d 1279, cert. denied 247 Conn. 919, 722 A.2d 807 (1998); General Statutes § 17a-112(c)(3). In this adjudicatory phase, the court is ordinarily limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a). Because there were no amendments in this case, the adjudication is to be made based upon facts existing or alleged as of February 23, 2000, the date of the filing of the original petition.
Failure to Rehabilitate
The petition alleges the ground of failure to rehabilitate by the mother and the father. The ground of failure to rehabilitate arises when "the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112(c)(3)(B). No dispute exists that the court adjudicated the child neglected on February 24, 1998, thus satisfying one element of the statute.
The rest of the statute requires the occur to find whether the parent has achieved "such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." General Statutes § 17a-112(c)(3)(B). The statute requires the court to analyze the parent's rehabilitative status "as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable `within a reasonable time'." In reLuis C., 210 Conn. 157, 167, 554 A.2d 722 (1989). "In assessing rehabilitation, the critical issue is not whether the parent has improved CT Page 1141 [his or her] ability to manage [his or her] own life, but rather whether [he or she] has gained the ability to care for the particular needs of the child at issue." In re Danuael D., 51 Conn. App. 829, 840, 724 A.2d 546
(1999). The statute, however, does not require a parent to "be able to assume full responsibility for [a] child, unaided by available support systems." In re Juvenile Appeal (84-3), 1 Conn. App. 463, 477,473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984).
Measured by these standards, both the mother and the father clearly failed to rehabilitate. They both have poor records of compliance with court expectations. Furthermore, they did not benefit from the programs that they did attend. The parents continued to use drugs, and particularly in the mother's case, exhibited poor parenting skills during the adjudicatory period. Finally, the mother and the father have little to no relationship with their daughter. Although both parents began their involvement in this case determined to reunify with their daughter, their substance abuse and limitations quickly ate away at their commitment to rehabilitate. The parents then began only halfhearted attempts at compliance with the programs, halfhearted attempts to reunify with their daughter. DCF has accordingly proven failure to rehabilitate by clear and convincing evidence.
 DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." General Statutes § 17a-112(c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
In arriving at a decision, the court must consider and make written findings regarding seven factors set out in General Statutes §17a-112(e). See In re Tabitha P., 39 Conn. App. 353, 362, 664 A.2d 1168
(1995). These factors serve only to guide this court in making the ultimate decision whether to grant the termination petition and no one finding is a prerequisite. See In re Eden F., 250 Conn. 674, 691,741 A.2d 873 (1999). The court's findings regarding these seven factors follows.
1. The timeliness, nature and extent of services offered or provided to the parent and the child by an agency to facilitate the reunion of the child with the parent.
Some appropriate and timely services were provided by the Department of Children and Families, including case management, transportation assistance, visitation coordination, a referral for substance abuse CT Page 1142 treatment to the Institute for Hispanic Families, and reunification services through Catholic Family Services (which unfortunately was terminated due to their noncompliance with their substance abuse treatment). In addition, the mother should have had a mental health evaluation and if appropriate, treatment in order to facilitate her reunification. In fact, DCF asked the court to order a psychological evaluation in April 2000. Unfortunately, this was three months after the court had made the finding that reunification efforts were no longer appropriate, and the court denied their request.
2. Whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the Federal Child Welfare Act of 1980, as amended.
DCF has made minimal efforts given the situation and circumstances to reunite the family in accordance with state and federal law. Although the court believes DCF could have been more vigilant in attempting to engage the parents in services geared toward reunification, including a mental health referral and follow-up with their substance abuse treatment, the parents did not avail themselves of the limited referrals made on their behalf.
3. The terms of any court order entered into and agreed upon by any individual or agency and the parent, and the extent to which the parties have fulfilled their expectations.
Regarding court orders, fulfillment of obligations, expectations and service agreements, the Department, with the approval of the court, set reasonable and realistic expectations to reunify the family on December 9, 1997. There was only minimal compliance, if any, by the mother and the father. They were inconsistent with some of the expectations. Further, with regard to their substance abuse, they failed to follow through on any of the recommendations and continued to test positive for cocaine usage.
4. The feelings and emotional ties of the child with respect to her parents, any guardians of her person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
Unfortunately, Chaquira has been in four foster homes in her short life of three years. If she in fact did develop any emotional ties with any of the foster parents with whom she resided, the court heard no evidence and since she was recently placed with a new foster family, any emotional ties she did develop have now been broken. CT Page 1143
5. The age of the child
Chaquira is now three years old.
6. Finding regarding the efforts the parent has made to adjust his/her circumstances, conduct, or conditions to make it in the best interest of the child to return him/her to his/her home in the foreseeable future, including, but not limited to: (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
These parents have made little to no effort to adjust their circumstances to permit their daughter to safely return to their care. The father has failed to maintain contact with his child or with DCF. The mother has not addressed her substance abuse nor her mental health issues to permit Chaquira to safely return to her care.
7. Finding regarding the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent.
The parents substance abuse and failure to follow court ordered expectations did not form a meaningful relationship with Chaquira. The court observed no conduct by DCF or any other person which prevented the parents from developing and maintaining a meaningful relationship with Chaquira. There is no evidence that the parents' economic circumstances prevented a meaningful relationship from being maintained.
 CONCLUSION
The court having considered all statutory considerations and having found by clear and convincing evidence that a ground exists for termination of parental rights, further finds upon all of the facts and circumstances presented, that it is in the child's best interest to terminate the parental rights of Zoraida S. and Hector M. This best interest finding is made after considering the child's sense of time, her need for a secure and permanent environment, the lack of a relationship with her biological parents, and the totality of the circumstances. It is in the child's best interest to have a permanent home and free for immediate adoption rather than shuttled from one foster family to another. The court notes that the counsel for the child supports this CT Page 1144 result as being in the best interests of the child so that she can be provided with a permanent and stable home as soon as possible. Accordingly it is ordered that the parental rights of Zoraida S. and Hector M. to the child, Chaquira M., are hereby terminated.
It is further ordered that the Commissioner of the Department of Children and Families is hereby appointed the statutory parent for the purpose of securing an adoptive family or other permanent placement immediately. The Commissioner shall file with the court, no later than thirty (30) days following the date of judgment, a written report toward such permanent placement and file such further reports as are required by state and federal law.
SWIENTON, J.